UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                   CASE NO. 14-11269

LARRY GAINES                                                                 SECTION "B"

    DEBTOR                                                                      CHAPTER 7
**************************************************************************
NAVY FEDERAL CREDIT UNION
    PLAINTIFF

VERSUS                                                                                ADV.P. NO. 14-1042

LARRY GAINES
    DEFENDANT


**MEMORANDUM OPINION**

       This matter came before the court on September 17, 2015 as a trial on the complaint filed by creditor, Navy Federal Credit Union ("NFCU") seeking to declare the debt owed by the debtor, Larry Gaines ("Gaines"), nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(2)(B). For the reasons set forth below, the court finds that NFCU did not prove its case by a preponderance of the evidence as required by the statute.

**I.    Background Facts**

       This controversy concerns a 2010 Maserati Quattroporte that NFCU alleges Gaines purchased from Auto Nation Car Sales, an auto dealer in Georgia, on December 16, 2013. NFCU alleges that on December 4, 2013 Gaines applied for a loan to purchase the car through an over the phone application system. NFCU then alleges that it mailed a draft, dated December 6, 2013, that was made payable to Auto Nation Car Sales, LLC, to Gaines at his home address in New Orleans. NFCU alleges that Gainessigned and endorsed the draft, which was deposited into

the auto dealership's bank account.

Gaines denies that he made the over the phone application, that he endorsed the draft, and that he purchased the car. Gaines contends that he first learned of the vehicle purchase when he was contacted by NFCU in March 2014 because he had not made payments on the loan. At this point he informed NFCU that he had not purchased the vehicle[1] and filed an affidavit of forgery/fraud with NFCU;[2] at Gaines's request NFCU opened a fraud investigation. NFCU also advised Gaines to file a report with the New Orleans police department, which he did.[3] Gaines complied with NFCU's rather limited fraud investigation, which resulted in a determination by NFCU that Gaines was the purchaser of the car and that he was liable for the $51,893 in principal plus accrued interest on the loan.[4]

On May 20, 2014 Gaines filed a petition for relief under Chapter 7 of the Bankruptcy Code, and NFCU subsequently filed this adversary proceeding seeking to have the debt related to the loan for the car purchase declared nondischargeable.

## II. Legal Analysis

The elements of an objection to the dischargeability of a particular debt under Section 523 must be proved by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In this case, the court has reviewed the post trial briefs, the documents entered into evidence, and the recording of the testimony taken at trial at length, and

---

[1] Trial Exhibit 9.

[2] Trial Exhibit 8.

[3] Trial Exhibit 18.

[4] Trial Exhibit 10.

is troubled by many aspects of this case.  The court's predominant concern is that no one even alleges that Gaines has the car or the proceeds of the loan.  Gaines testified credibly that he had not made the phone call to apply for the loan, had not signed any of the papers related to the loan, had not traveled to Georgia in December 2013, had never seen the car, and did not have the car.  NFCU does not allege that Gaines has the car.  NFCU implies that someone acting on Gaines's behalf signed the papers and got the car.  There is no evidence as to who that was, how that happened, or where the car is now.  The draft was made out to the car dealership, not to Gaines, and the draft from NFCU was deposited in the dealership's bank account.  If Gaines does not have the money, and he does not have the car, the court wonders, where is the debt?

The court is also concerned by the great number of unanswered questions that have presented themselves in this case.  Gaines testified that he did not make the phone call applying for the car loan.  The records of NFCU show that the call did not come from Gaines's home phone number in New Orleans, but rather from a number with a Michigan area code.[5]  This number was used to access Gaines's account a number of times in December 2013, suggesting he possibility that someone other than Gaines was accessing Gaines's account.  This is consistent with Gaines's testimony that he did not make the application for the loan using NFCU's over the phone application process.  Gaines also testified that he never went to Georgia in 2013 and had only been to Atlanta a number of years before 2013.  He also testified that although he owned two cars in 2013, he had never bought or owned a Maserati.

NFCU argues that whoever made the application over the phone knew Gaines's personal information.  That may very well be true, but as anyone who has not been living under a rock

---

[5] Trial Exhibit 3.8.

knows, theft of personal information is not unusual in this day and age.  Surely, it would not have been terribly hard to find the owner of the phone number that accessed Gaines's account and made the phone application for the loan, but no attempt was made by either party to this dispute to do so.  Thus, the identity of the loan applicant is be known with certainty.

Another troubling aspect to this case is that no one seems to know where the car is.  The car itself, a Maserati, is not that common a car.  Further, when purchasing a car, one is required to register the car with a state for licensing, and insurance must be provided.  Somewhere, records should exist that would enable this car to be tracked down if an effort were made.  No one in this case has made any effort to do so, or if they did, these efforts were not described at trial.  And wherever the car is, NFCU supposedly has a security interest in it. NFCU made the car loan on the basis of Gaines's credit record and not on the value of the car as security for the loan, so it may not be obligated to do so, but it leaves the court wondering why NFCU has not tried to locate the security but instead is pursuing the dischargeability action against Gaines with such vigor, when it is clear that he does not have the proceeds of the loan or the car, and that he likely does not have the means to repay the loan even if the court were to find the alleged debt nondischargeable.[6]

Although the court has grave doubts that there is even a debt owed by Gaines in connection with the purchase of the car, the court will briefly address NFCU's arguments in its brief that this "debt" is exempted from discharge.  Treating the two subsections under §§ 523(a)(2)(A) and (a)(2)(B) of the Bankruptcy Code in reverse order, the court notes the

---

[6] The court also wonders why NFCU did not instead bring a dischargeability action against Gaines for the credit card that NFCU issued to Gaines that has a balance of over $10,000. Gaines freely admits to applying for this card.

following:

### A. 11 U.S.C. § 523(a)(2)(B)

Under the clear language of 11 U.S.C. § 523(a)(2)(B), NFCU must show that the car loan was "obtained by . . . use of a statement in writing--

i.  that is materially false;

ii. respecting the debtor's or an insider's financial condition;

iii. on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

iv. that the debtor *caused* to be made or published with intent to deceive . . . ." (emphasis added).

Several courts have held that the creditor must prove the following five elements: (1) the existence of a statement in writing; (2) the writing was materially false; (3) the writing concerned the debtor's financial condition; (4) the creditor reasonably relied on the statement; and (5) the statement was made or published with the intent to deceive. *Byrd v. Bank of Mississippi,* 207 B.R. 134. The existence of each of these elements is a question of fact which the creditor must prove by a preponderance of the evidence. *Matter of Norris*, 70 F.3d 27 (5th Cir. 1995).

Here, the application for the car loan was taken over the phone, and the money was disbursed *before* there was any document signed. NFCU argues that the promissory note signed by Gaines (which signature he denies, but assuming for purposes of this argument that it is his) contains a provision stating: "I certify that all information provided by me is true and complete," and that constitutes a writing. The note itself is not the kind of writing encompassed by § 523(a)(2)(B). The note was signed *after* the money was already disbursed, so NFCU cannot argue that it reasonably

relied on the note as a statement in writing when making the loan. All it relied on was an over the phone application, which it apparently did not work very hard to verify. The court finds that NFCU does not satisfy the requirements of § 523(a)(2)(B).

    **B.**    **11 U.S.C. § 523(a)(2)(A)**

As to § 523(a)(2)(A), the objecting party must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on the representations; and (5) that the creditor sustained losses as a proximate result of the representations. *In re Acosta*, 406 F.3d at 372, *citing*, *In re Mercer*, 246 F.3d at 403.

Here again NFCU runs into problems proving its case with a preponderance of the evidence. In addition to the various documents introduced into evidence, NFCU called three witnesses. The first was Robert G. Foley, a document examiner recognized by the court as an expert witness. His testimony certainly was persuasive that the signatures on the two December 16, 2013 promissory notes evidencing the car loan was the same as other documents that admittedly contained Gaines's signature.[7] The problem with his testimony is that he had no contact with Gaines, never had Gaines give his signature in his presence, and relied on NFCU's representation that the documents he used as comparative signatures were the "known" signature of Gaines. There was no application *signed by* Gaines for the car loan, so this expert witness's

---

[7] One problem with his identification is that he listed as the questioned documents the two December 16, 2013 notes but did not list as a questioned document the draft dated December 6, 2013. Instead, in his report he referred to the draft as a comparative document containing a signature submitted as the *known* signature of Gaines, when it is clear that the signature on the draft is also in question.

identification of the signature on the two notes is of little assistance to the court in determining whether Gaines knowingly misrepresented his income to NFCU in acquiring the car loan.

      The second witness was Jeffrey M. Beacham, who had been employed by NFCU for over six years.  Although he testified at quite some length as to NFCU's standard procedures in taking applications for either car loans or credit card loans over the telephone, NFCU's records for the loans it made to Gaines, and that there was no variation or deviation from the usual procedures by NFCU in handling the Gaines loans, he frankly admitted he was *not* a part of NFCU's handling the applications in this case.

      Finally, William F. Mosley, the third witness called by NFCU was employed by NFCU to investigate fraud by members of NFCU.  His so called investigation is reported in Trial Exhibit 10, which shows he never met with Gaines but only talked to him on the phone.  Under cross examination at the trial, he admitted that once NFCU determined the draft was received by the car dealer it never tried to locate the vehicle, never contacted the New Orleans police, the Georgia authorities, or the FBI.  Also, once NFCU determined that the draft was deposited in an account at a Wells Fargo Bank, it did not try to to find out which branch received the deposit.[8]  It is not seriously contested by NFCU that the car dealer got the proceeds of the draft, and that seemed to end the matter as far as NFCU was concerned.

      This vague, incomplete testimony of these NFCU witnesses, only two of whom had any contact with Gaines, has to be compared to the direct testimony of Gaines under oath.  Gaines testified that he did not make the over the phone application, did not have the car, and had not

---

[8] The draft admitted into evidence as Trial Exhibit 5 is endorsed by Auto Nation Car Sales, LLC and was deposited in an account ending in 939.

been to Georgia in 2013. He was a very credible witness, and the court believed his testimony. This credible testimony was bolstered by the facts in evidence, including that the phone application was not made from his phone number, and again, the undisputed facts that did not get the proceeds of the draft and does not have the car. Thus, NFCU's case under § 523(a)(2)(A) fails, because it has not shown by a preponderance of the evidence that Gaines made a representation upon which NFCU relied in making the loan. Whether or not Gaines signed the promissory note (which is in dispute as well) is irrelevant, because NFCU made the loan before the notes were ever signed.

### III. Conclusion

For the reasons set forth above, primarily because the court is not convinced there is a debt, but that even if there is a debt, NFCU did not prove its case beyond a preponderance of the evidence, the court dismisses NFCU's complaint seeking to have the debt declared nondischargeable.

New Orleans, Louisiana, March 30, 2016.

*Jerry A. Brown*
U.S. Bankruptcy Judge